## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**KOLETTE GARAY**,

    *Plaintiff,*

**v.**

                         **Case No. 18-cv-1736-RCL**

**ANDREW M. SAUL**,[1]
Commissioner of Social Security,
    *Defendant.*

### MEMORANDUM OPINION

Plaintiff Kolette Garay brings this action challenging a Social Security Administration determination that she is ineligible for supplemental security income because she is not disabled under the Social Security Act, 42 U.S.C. § 1382 *et seq.* Before the Court are plaintiff's Motion for Judgment of Reversal, ECF No. 13, and defendant Andrew M. Saul's Motion for Judgment of Affirmance, ECF No. 14. After considering the motions and the entire record, the Court will **DENY** plaintiff's motion and **GRANT** defendant's motion.

### I.       BACKGROUND

Through an adjudicatory process, the Social Security Administration provides benefits to individuals who cannot work because of a physical or mental disability. On December 16, 2014, plaintiff filed an application with the Social Security Administration for supplemental security income for an alleged disability that began on November 28, 2014. Soc. Sec. Admin. Op. 1, ECF No. 9-2. This claim was initially denied on May 4, 2015, and denied again upon reconsideration on July 9, 2015. *Id.* Plaintiff subsequently filed a request for a hearing, which was held on April

---

[1] Andrew M. Saul, Commissioner of Social Security, is substituted for Nancy A. Berryhill, his predecessor. *See* Fed. R. Civ. P. 25(d).

13, 2017, in front of the Honorable Thomas Mercer Ray, an Administrative Law Judge ("ALJ"). *Id.*

At the hearing, plaintiff appeared and testified in person. *Id.* She alleged that she was disabled from November 28, 2014 to October 31, 2016, when she was able to return to work. *Id.* Plaintiff testified that on November 28, 2014, she was struck by the side-view mirror of a vehicle and injured her arm. Tr. 21–22. She went to the emergency room and was diagnosed with a left distal radius fracture, commonly known as a broken wrist. Ex. 1A at 4, ECF No. 9-3. Plaintiff had surgery on her injured arm about one month later and testified that afterwards she could not work or do household activities such as wash dishes or sweep because of the pain. Tr. 31–33. By November 2016, however, her injury had healed enough for her to return to work stacking boxes at Verizon. Tr. 33–34; Ex. 14F at 2, ECF No. 9-8.

Plaintiff also testified that, despite being injured, she continued to act as a home health aide to her husband, who has been paralyzed and bedridden since having a stroke in 2013. Tr. 43, 45–46, 49. Plaintiff explained that during her period of disability she regularly bathed, dressed, and put her husband in his wheelchair, although her family also helped her care for him. Tr. 44, 49, 61.

Dr. James M. Ryan, an impartial vocational expert, also testified. Tr. 65–69. The ALJ gave Dr. Ryan a hypothetical individual and asked him whether there would be any jobs that individual could perform in the national economy. Tr. 66–67. The ALJ's hypothetical individual could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, push or pull as much as the individual could lift or carry, stand, walk, or sit for six hours in an eight-hour workday, and occasionally reach overhead with the non-dominant arm. *Id.* Dr. Ryan testified that the individual could work in the national economy as a cashier, packaging worker, machine tenderer, inspector, or in other similar jobs. Tr. 67. Plaintiff's counsel then asked Dr. Ryan whether those previous

2

jobs would remain available if the individual could only occasionally reach, handle, and finger objects with the non-dominant arm and hand. Tr. 67–68. Separately, plaintiff's counsel asked Dr. Ryan if those limitations were adjusted to "less than occasional." Tr. 28. Dr. Ryan testified that at most "there would be an impact," but the jobs he previously identified would remain available to the individual under either scenario. Tr. 68.

On November 15, 2017, the ALJ issued his decision denying plaintiff's supplemental security income claim. Op. 2. The ALJ found that plaintiff had not engaged in substantial gainful activity during the requested period of disability, that her arm injury was a severe impairment, and that her severe impairment did not equal or exceed the criteria of an impairment listed in 20 C.F.R. Part 404, subpart P, Appendix 1. Op. 4–5. The ALJ then considered plaintiff's Residual Functional Capacity ("RFC") and found that plaintiff was not disabled because she could perform light work, subject to the limitations of the first hypothetical individual discussed at the hearing. Op. 5. After unsuccessfully seeking review by the agency's Appeals Council, plaintiff timely filed this suit under 42 U.S.C. § 405(g).

## II.   LEGAL STANDARD

Our review of the ALJ's decision is limited to deciding whether the ALJ correctly applied the relevant legal standards and whether substantial evidence supports the ALJ's findings. *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). The substantial evidence standard "requires more than a scintilla, but . . . less than a preponderance of the evidence," *id.* (internal quotation marks omitted), and can be satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

To qualify for supplemental security income under the Social Security Act, plaintiff must establish that she is "disabled." 42 U.S.C. § 1382(a)(1). Under the Act, an individual is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 1382c(a)(3)(A).

The Social Security Administration has established a five-step sequential evaluation process for assessing whether an individual is disabled. *See* 20 C.F.R. § 416.920(a). The first three steps involve, respectively, the ALJ considering whether the individual is currently doing "substantial gainful activity," whether the medical impairment is "severe," and whether the severe medical impairment meets one of the "listings" in the relevant subpart appendix. §§ 416.920(a)(4)(i)–(iii). If the severe medical impairment is not a listed impairment under the third step, the ALJ then assesses the individual's RFC before moving on to the fourth step. §§ 416.920(a)(4), (e). An individual's RFC is the most she can still do despite her limitations and is assessed based on all the relevant evidence in the record. § 416.945(a)(1). If the ALJ finds that the individual can adjust to other work based on her age, education, and the RFC assessment, she is not disabled under the Social Security Act. § 416.920(h).

## III.    DISCUSSION

At issue is the ALJ's finding regarding plaintiff's RFC. Specifically, plaintiff claims that the ALJ did not provide an adequate explanation to support his RFC findings regarding plaintiff's physical limitations and that the ALJ failed to address "the State Agency physicians' qualifications to their opinions that [their] . . . assessments [of plaintiff's RFC] were for the period beginning 12 months after onset." Pl.'s Mot. J. Reversal 6, 8, ECF No. 13-1.[2] Because there is substantial

---

[2] Plaintiff also argues that the ALJ misidentified her severe impairment in his decision by listing it as a "fracture of [her] upper arm," rather than a left distal radius fracture. Plaintiff claims that this misidentification led to an erroneous

evidence that plaintiff was not disabled for the required statutory duration, the Court need not reach plaintiff's arguments to affirm.

As relevant here, the Social Security Act requires an individual to suffer an impairment for a "continuous period of *not less than twelve months*" before a finding of disability can be made. 42 U.S.C. § 1382c(a)(3)(A) (emphasis added). Unfortunately for plaintiff, she has not met that burden. In his decision, the ALJ relied in part on three different doctors who, in 2015, evaluated plaintiff's RFC as part of her supplemental security income claim. Op. 6. Those doctors provided expert medical opinions that plaintiff could perform light work with limitations, and that she therefore was "not disabled." Ex. 1A at 8, ECF No. 9-3; Ex. 3A at 8, ECF No. 9-3; Ex. 8F at 1–2, ECF No. 9-8. In reaching this conclusion, all three agreed that plaintiff's "condition is not expected to remain severe enough for 12 months in a row to keep [her] from working." Ex. 1A at 8; Ex. 3A at 9; Ex. 8F at 1–2. To further emphasize the point, the doctors chose November 27, 2015, as the date plaintiff's RFC would begin. Ex. 1A at 6; Ex. 3A at 6; Ex. 8F at 1.

It is worth examining this date closely. Plaintiff claimed her disability began on November 28, 2014. The statute requires plaintiff to be disabled for a minimum of twelve months. § 1382c(a)(3)(A). Twelve months after November 28, 2014, is November 28, 2015. It is *not* November 27, 2015, the date all three doctors agreed plaintiff would be able to perform light work with limitations. Those doctors, who were evaluating plaintiff's medical records as part of her supplemental security income claim, surely did not pick this date randomly, but instead chose it as an indicator that plaintiff's "condition is not expected to remain severe enough for 12 months in a row to keep [her] from working." Ex. 1A at 8. Even if plaintiff were disabled and unable to work

---

RFC. Reply 2, ECF No. 18. Because the ALJ, while setting forth plaintiff's RFC, also described her injury as "a left arm fracture" and "a left distal radius fracture" that affected her ability to "use her hands," the Court is unconvinced that the ALJ misunderstood the nature of plaintiff's injury. *See* Op. 6.

between November 28, 2014, and November 27, 2015, a conclusion the doctors themselves do not make, that would still mean plaintiff was one day short of the twelve-month minimum to succeed on her claim. Because these experts' opinions are "relevant evidence" that "a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 401, the Court holds that there is substantial evidence to support the ALJ's conclusion that plaintiff is not disabled.

Given the Court's conclusion, plaintiff's other arguments need not be addressed in detail. Even if the ALJ erred by not adequately explaining his RFC findings or by not considering the fact that the medical experts' opinions were for plaintiff's RFC beginning on November 27, 2015, such errors are harmless. In reaching his decision, the ALJ did not reject any testimony, nor was there a conflict among the experts that plaintiff would not be disabled beginning on November 27, 2015. *See Butler*, 353 F.3d at 1001–02 (remanding because the ALJ did not explain contradictory evidence in the record); *Mascio v. Colvin*, 780 F.3d 632, 639–40 (4th Cir. 2015) (remanding in part because the ALJ did not adequately explain why he rejected some of plaintiff's statements regarding his pain). Thus, on this record, a remand would at best produce a lengthier explanation of the same outcome and is therefore not required. *See Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) ("As a general rule . . . an ALJ's failure to adequately explain his factual findings is not a sufficient reason for setting aside an administrative finding where the record supports the overall determination.") (internal quotation marks omitted); *see also NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (when "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game").

## IV.   CONCLUSION

Based on the foregoing, the Court will **DENY** plaintiff Kolette Garay's Motion for Judgment of Reversal and **GRANT** defendant Andrew M. Saul's Motion for Judgment of Affirmance. A separate Order accompanies this Memorandum Opinion.

Date: October 2 , 2020

Royce C. Lamberth
United States District Judge

7